OPINION OF THE COURT
Ira Gammerman, J.
Petitioner De Luise, as an individual and the president of the 2765-69 Mathews Avenue Tenants Association, an unincorporated association in The Bronx, moves, pursuant to article 78, for an order, inter alla, nullifying the determination of respondent Gliedman (Gliedman), the Commissioner of the New York City Department of Housing Preservation and Development (HPD), to grant a loan to re *473 spondent landlord, E&O Associates (E&O) as arbitrary, capricious, an abuse of discretion and unlawful. Petitioner also seeks to stay Gliedman from making the loan to E&O and to stay E&O from applying to the Conciliation and Appeals Board (CAB) for rent increases predicated upon the renovations and rehabilitation, completed and planned, at the subject premises. Finally, petitioner requests a remand of this matter to HPD for a review and determination in accord with the applicable law and regulations.
After oral argument on March 18, 1983, the court granted that portion of the petition which sought to restrain E&O from applying for rent increases and, with the exception of the request for a stay to prevent HPD from transferring loan money to E&O which was mooted by the passage of time, reserved decision upon the remainder of the petition. On June 14,1983 and in response to a motion (No. 141, June 3, 1983) by E&O to vacate the temporary restraining order which prevented the landlord from applying to the CAB for rent increases, the parties consented to a modification of that temporary restraining order which permitted the landlord to apply for the rent increases but not to collect any increases which might be approved.
Respondent Gliedman asserts that the petition fails to state a claim as to him and further that petitioner lacks standing to challenge the determination to grant the loan. Gliedman thus moves for dismissal of the petition.
Respondent landlord, E&O, answers in a like fashion and adds that the claims alleged are not ripe for judicial review.
Respondents’ argument, that the petitioner lacks standing, is without merit (see, generally, Matter of Grenader v Lefkowitz, 47 AD2d 359). The tenants have constitutional and statutory support for asserting their denial of due process based upon their effective preclusion from the loan application process. In addition, a failure by the tenants to challenge HPD’s actions in this article 78 proceeding would operate as a waiver of any such right before the city rent agencies. The matter is, therefore, ripe for judicial determination.
*474 The article VIII-A of the Private Housing Finance Law loan application for the $150,000 statutory limit was made by E&O’s managing agent, A. Richard Parkoff (Parkoff), to HPD on November 6, 1981. On December 17, 1981, HPD’s Ron Crowne inspected the subject premises as part of HPD’s loan procedure. The following day, in a letter which began with management’s wishes for a “Happy Holiday Season” and dealt almost entirely with the heating plant at 2765-69 Mathews Avenue, E&O informed the tenants that it “had pending an application for moderate rehabilitation which looks favorable at this juncture”.
In February, 1982 a series of meetings, between the landlord’s agent and tenant representatives, were held in Assemblyman Engel’s office. E&O claims that the tenants were advised of the specifics of the pending loan application. The tenants aver that Parkoff merely mentioned that the landlord was seeking a loan to make some repairs. Parkoff asserts in his affidavit that at “various other times” during the pendency of the application he “orally communicated” with the tenants about the “status” of the loan.
On April 20, 1982, HPD gave preliminary approval to the loan application. On August 2, 1982 “final review” of the application, now in the amount of $181,820, was made.
By letter dated September 7, 1982, Parkoff informed the tenants, in a tone suggesting a fait accompli, that HPD “has received an application from me, for a rehabilitation loan * * * and that HPD is granting this rehabilitation loan”. The letter went on to discuss the work which could be done in the subject premises, management’s need for access to each apartment, and the rent increases which the tenants could expect.
On September 13, 1982 Parkoff advised the tenants by letter that E&O “received clearance from [HPD] as our loan is being approved.”
The co-ordinator of HPD’s article VIII-A loan program, Richard Long (Long), sent a form letter dated September 23, 1982, advising the tenants that HPD had received an application from E&O for a rehabilitation loan, listing the proposed improvements, and discussing the approximate rent increases the tenants could expect. After the receipt of *475 this letter, the tenants requested a meeting with HPD. October 26, 1982 was set as the meeting date.
In a letter dated October 23, 1982 Parkoff informed the tenants that a portion of Long’s September 23 letter was incorrect. No rent increases were requested regarding elevator service (there having been such an increase the prior year).
At the October 26 meeting, the tenants’ representatives submitted, in objection to the loan, a petition signed by 62 tenants. These representatives also informed Long of the confusion engendered by the conflicting information received from HPD and the landlord. In addition, the tenants asserted that the repairs were unnecessary and that, in any event, the scheduled increases did not seem justified by the proposed improvements. Most importantly, the tenants demanded input into the loan application process to determine, among other things, if that application was being treated in accordance with the appropriate laws and regulations.
Long concluded that the tenants had “no substantial reasonable objection” and informed the tenants, according to their papers, that approval of the loan was “certain to be given sometime that week, and there was nothing they could do to stop it”. Long notes in his affidavit that, “although ‘final approval’ of the loan had been granted, if the tenants had presented such a ‘substantial reasonable objection’, the closing of the loan would have been postponed while that objection was considered”. On October 28, 1982, the loan closed.
HPD’s rule 4.1(d), promulgated pursuant to section 453 of article VIII-A of the Private Housing Finance Law, requires the owner of the subject premises “to give tenants * * * written notification of the proposed rehabilitation or improvement”. (Emphasis added.)
Respondents argue that the correspondence, meetings and various alleged oral communications, when considered in toto, satisfy the notice requirement of rule 4.1(d). The court does not agree that the tenants were provided the due process notice to which they are entitled. HPD’s rule 4.1(d) clearly places the burden' of providing meaningful written *476 notification to the tenants upon the building owner. In the instant matter such notice was never given.
The December, 1981 letter from the landlord which spoke of a “moderate rehabilitation” loan application, failed to identify the body to whom the application was made and certainly did not indicate that the application was before a public entity. Further, there was no mention of the size of the loan or that there would be rent increases if the application was granted.
In the flurry of letters which began on September 7,1982 (10 months after the application was made, five months after HPD gave preliminary approval to the application and a month after the agency bestowed final approval upon the loan request) the tenants were provided their initial written notice. That notice merely identified, for the first time, the agency. No mention was made of the amount sought although reference was made to rent increases.
Long’s September 23 letter invited “questions or comments” about the rehabilitation but contained no reference to objections.
Parkoff’s letter of October 23 attempted to clear up the confusion created by Long’s erroneous statement that the loan was, in part, for “elevator upgrading”. Again, there is no mention of the right of the tenants to input or objection in the loan process.
Finally, the fact that the October 28 closing came immediately upon the heels of the October 26 meeting lends credence to the tenants’ belief that there was nothing they could do, certainly at that point, to stop the closing.
Due process requires that the tenants be afforded a real opportunity to make their views known; to marshal and present evidence to support their position; and to be heard in a manner which would allow for reflection and deliberation by the individual or body charged with making the determination. Such basic considerations are required by New York State’s unique due process clause (NY Const, art I, § 6; Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 159-160). These minimum opportunities were not afforded here.
Section 453 (subd 1, par [b]) of the Private Housing Finance Law requires, as a further condition precedent to *477 the grant of an article VIII-A loan, that: “No person who lives in such multiple dwelling at the time the loan is made shall be required to move because of the rehabilitation or improvement financed thereby”.
Petitioner contends that a number of tenants will be required to move due to their inability to pay the 24% rental increase to which the landlord will be entitled, and offers affidavits of several tenants to that effect.
In view of the statutory requirement, respondents’ reliance on the alleged availability to these tenants of section 8 (US Code, tit 42, § 1437F) Federal rent subsidies is misplaced. Respondents cannot guarantee that such subsidies will be granted, and have offered no alternative solution to these tenants’ alleged inability to pay a 24% rental increase.
It is apparent that the tenants’ objections warrant further consideration by HPD. The petition is granted to the extent of remanding the matter to respondent Gliedman for further action consistent with this decision. The temporary restraining order, barring respondent E&O from collecting any rent increases the CAB might approve in connection with the application pursuant to the instant loan, is continued until 30 days after respondent Gliedman’s determination on this remand and without prejudice to the petitioner’s right to seek further relief.