OPINION OF THE COURT
Helen E. Freedman, J.
Plaintiffs, tenants in a housing development known as Paul Dunbar Apartments, bring a declaratory judgment action seeking: (1) to review prior actions of the New York City Department of Housing Preservation and Development (hereinafter HPD), in approving a “participation loan” to Goldome Bank; (2) to be *616 permitted to participate in the process by which rents are restructured; and (3) to participate in determining when the rehabilitation has been completed.
The facts in this case do not appear to be in dispute. They are, briefly stated, as follows: Goldome Bank through a subsidiary, Dunbar No. 1 Cooperative Apartment Corp., has been the owner of Paul Dunbar Apartments, a 536-apartment complex located in Northern Manhattan, since July 1981. Previously Goldome, and its predecessors New York Bank for Savings and Buffalo Savings Bank, held a $5,000,000 consolidated first mortgage on Dunbar Apartments.
Seeking to renovate the apartment complex, Goldome applied for a “participation loan” from HPD in mid-1980 pursuant to Private Housing Finance Law § 800 et seq. Under this statute, HPD approves a loan enabling renovation to proceed at a reasonable cost. Upon the completion of the renovation HPD authorizes restructuring of the rents by the landlord. Here Goldome proposed consolidation of $6,500,000 additional mortgage with the existing $5,000,000 mortgage, and sought participation by HPD to the extent of $3,800,000.
Pursuant to the statutory mandate, a meeting was held to explain the participation loan program to the tenants on June 4, 1981, and on July 8, 1981 HPD sent a follow-up letter confirming the information that had been imparted at the June meeting. The scope of the proposed rehabilitation work as well as the proposed anticipated rents (which provided for section 8 assistance for tenants of moderate means) were set forth in the letter. The new rents were to be established after satisfactory completion of the rehabilitation work. The loan was actually approved in September of 1981.
Since the loan approval, substantial renovation has occurred. However, a number of tenants have been extremely dissatisfied with the quality of the work and the conditions of the premises. Matters deteriorated sufficiently so that in 1983 in a proceeding in Housing Court, Judge Ralph Sparks appointed an administrator pursuant to RPAPL article 7-A to oversee collection of rents, repair of apartments and rental of vacant apartments.
Defendant HPD, joined by Goldome Bank, moves to dismiss this action on the ground that the participation loan was applied for and approved pursuant to Private Housing Finance Law, article 15, § 800 et seq., some three and a half years ago. It claims that any challenge to the granting of the loan and the proposed restructuring of the rents is barred by the Statute of *617 Limitations applicable to CPLR article 78 proceedings (four months) and by loches.
As to completion of work and the actual rent restructuring, HPD asserts that it has not declared the rehabilitation work complete (see reply memorandum which specifies, “for purposes of this motion, we concede that the work is not complete”) and that no restructured rents have been established. Since Private Housing Finance Law § 804 mandates that HPD establish such rents once the work is complete, the Department claims that a challenge to both the determination of completion and the procedures that will be employed to establish rents is premature.
The motion is granted in part and denied in part.
With respect to the original approval of the participation loan in September of 1981, this court agrees with defendants HPD and Goldome that any challenge to that procedure or determination is barred by the Statute of Limitations contained in CPLR 217. (See, Lenihan v City of New York, 58 NY2d 679 [1982]; Press v County of Monroe, 50 NY2d 695 [1980]; Solnick v Whalen, 49 NY2d 224 [1980].) Those cases hold that the four-month Statute of Limitations applies where the actions of a government official are at issue and an article 78 proceeding would have been an appropriate method of challenging those actions.
Clearly, the action as set forth in the complaint and supporting papers challenges government action and could have been brought as an article 78 proceeding. Plaintiffs have sought to declare defendants’ policy and practice in connection with the awarding of the participation loan pursuant to Private Housing Finance Law article 15 violative of due process and arbitrary and capricious.
Even if the four-month Statute of Limitations had not expired, HPD (pursuant to statute) did involve the tenants in the initial process of the awarding of a loan, albeit in an informal manner, by holding a meeting and sending a follow-up letter inviting comments and dissent. Under the authority of Matter of Laureano v Koch (100 AD2d 192, 198 [1st Dept 1984]), it would appear that this informal procedure satisfies due process. Indeed, plaintiff appears to concede this point, for while the complaint challenges the decision to grant the loan, plaintiffs subsequently prepared memoranda specifically disclaiming such a challenge.
For all of the above reasons, the court dismisses so much of the complaint as is set forth in paragraphs 2 and 3 of the first and *618 second causes of action and items 1 and 2 of the “wherefore” clause, which appear to challenge the granting of the participation loan.
As to those portions of the complaint which seek a declaration that the rehabilitation of the Dunbar complex has not been completed, and a preliminary injunction to prohibit “the restructuring of initial rents until such time as the plaintiffs have notice of ap opportunity to be heard on the completion of the rehabilitation work and the basis of projected rent increases”, dismissal is not warranted.
Defendants’ papers and memoranda of law specifically concede that the work has not yet been completed. At the same time HPD’s papers indicate that it will determine when the work has actually been completed and unilaterally establish rentals for the tenants. Only after the rents have been set and the tenants so informed does defendant HPD acknowledge that any formal input from the tenants will be appropriate. Prior to the occurrence of those events, defendants claim that the matter will not be ripe for adjudication.
This court does not agree. In view of the recent history of the rehabilitation process in the Dunbar complex, it appears that there have been numerous problems which defendants have failed to address. Apparently, Goldome Bank applied for the actual rent increases at the same time that conditions had deteriorated to such a point that the appointment of a 7-A administrator was deemed warranted. A chance remark in the Housing Court proceeding seeking the 7-A administrator was the only notice that the tenants had that the Bank had submitted a rent increase application.
While Private Housing Finance Law § 803 mandates tenant involvement before a loan is approved, section 804 is silent concerning tenant input with respect either to completion of the work or the actual rent restructuring. However, in light of the circumstances of this case, the State and Federal Constitutions impose certain due process requirements. (Matter of De Luise v Gliedman, 120 Misc 2d 472, 476 [1983].)
In view of the lapse of time between the original loan approval wherein the tenants were consulted, and the considerable activity in Housing Court that has transpired, it would be a denial of due process if HPD were to proceed to restructure rents without providing the tenants a meaningful opportunity to be heard. “ ‘The fundamental requisite of due process of law is the opportunity to be heard * * * at a meaningful time and in a meaningful manner.’” (Goldberg v Kelly, 397 US 254, 267 [1970].)
*619 The situation here is clearly analogous to that of setting initial rents in buildings owned by the city as a result of tax foreclosures or in rem proceedings. In such a matter the First Department, while overruling Special Term’s determination that the tenants were entitled to procedures established by promulgation and publication of rules and regulations pursuant to the New York City Charter, acknowledged that due process required some notice to and participation by tenants. The court, in holding that the procedures already established by HPD were adequate to insure due process, said “‘Due process’ requirements would be satisfied if there was service of a notice of a proposed increase in rent well in advance of the date of the increase, an opportunity to the tenants for filing written objections and the right to the tenants * * * or their representatives to submit material they considered relevant to disprove the need for the rent increase.” (Matter of Laureano v Koch, supra, at p 198; see also, Burr v New Rochelle Mun. Hous. Auth., 479 F2d 1165, 1169.)
Accordingly, this claim is not premature.
Plaintiffs have set forth the basis for proceeding as a class under CPLR 901 but have not requested an order pursuant to CPLR 902. While it seems to this court that class action certification would be appropriate as plaintiffs appear to be a representative tenant group, defendants should be given an opportunity to voice objection to class certification. See Brandon v Chefetz (106 AD2d 162) and Matter of Goodwin v Gliedman (119 Misc 2d 538) for cases discussing class certification.
Based on the foregoing decision this court denies the motion to dismiss those claims relating to completion or rent restructuring, but directs plaintiffs to serve an amended complaint limiting its claims to those issues, in accordance with this decision. The amended complaint shall be served within 30 days of service of a copy of this order with notice of entry. Defendants shall answer the amended complaint within 30 days of service thereof.